UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHANE PEEK,

                                Plaintiff           DECISION AND ORDER

-vs-

                                                     07-CV-6120 CJS

JUDITH CUMMINS, ROBIN FILNER and
SANDRA GRIESEMER,

                              Defendants

_____

INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983 in which Plaintiff alleges that Defendants violated his federal constitutional rights in connection with their involvement in his parole revocation proceedings. Now before the Court are a Motion to Dismiss [#7] by defendant Judith Cummins ("Cummins") and a Motion to Dismiss [#25] by Defendants Robin Filner ("Filner") and Sandra Griesemer ("Griesemer") and a motion for appointment of counsel [#37] by Plaintiff. For the reasons that follow, Plaintiff's application is denied, Defendants' applications are granted and this action is dismissed.

BACKGROUND

The following facts are taken from the Complaint in this action and from other documents which are part of the record of Plaintiff's parole revocation proceedings.[1] At all

---

[1] "In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, 'matters outside the pleading are presented to and not excluded by the court,' the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b) . . . . In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on

1

relevant times, Defendants were employees of the New York State Division of Parole. Cummins was an Administrative Law Judge, Filner was an Administrative Assistant responsible for processing requests for transcripts, and Griesmer was responsible for the actual preparation of transcripts. In or about November 2002 Plaintiff, a convicted felon who was serving an indeterminate prison sentence of two-to-six years, was released to parole supervision. On or about February 19, 2004, Plaintiff and his wife were involved in an argument during which Plaintiff was accused of damaging his wife's car. Plaintiff was charged with a misdemeanor and subsequently pled guilty to the charge, on the understanding that his plea would not result in a parole violation. Nevertheless, a parole violation was filed, although Plaintiff subsequently withdrew his guilty plea. Parole revocation proceedings were conducted in Rochester, New York, on March 18, 2004, April 1, 2004, April 8, 2004 and May 13, 2004, before defendant Cummins, in her capacity as an Administrative Law Judge. Plaintiff alleges that during those proceedings, Cummins denied him a preliminary hearing, improperly relied on his withdrawn guilty plea as evidence of guilt, improperly relied on hearsay evidence, improperly granted adjournments, improperly considered evidence that had not been produced to the defense, denied him the right to cross-examine witnesses, and falsified and misstated evidence. On or about May 21, 2004, Cummins issued a decision, revoking Plaintiff's parole and recommending that he be held for fifteen months.

On or about May 21, 2004, Plaintiff appealed Cummins's determination, and requested transcripts of all revocation proceedings from the Division of Parole's offices in

---

such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotations omitted).

Albany, New York. In June 2004 Plaintiff received the transcripts for the April 1, 2004 and April 8, 2004 appearances. (Complaint ¶ 38). On October 5, 2004, Plaintiff received the transcript of the March 18, 2004 appearance. (*Id*.). However, despite sending several written requests to the Division of Parole, Plaintiff did not receive the May 13, 2004 transcript until March 12, 2005. Attached to the Complaint is copy of Plaintiff's transcript request that was received by the Division of Parole, on which someone wrote a notation that the May 13, 2004 transcript could not be located. (Complaint, attached letter received by Division of Parole on May 20, 2004: "Transcripts for 3/18 4/1 & 4/8 ordered 5/26/04. Nothing found for 5/13/04.").

Plaintiff subsequently completed his appeal. While he was awaiting a decision, Plaintiff was released from prison to parole supervision. On July 20, 2005, the Parole Appeals Board affirmed Cummins's determination and denied Plaintiff's appeal. In denying the appeal, the Appeals Board noted, in relevant part, that there was "nothing to indicate that the Division did not provide the information [transcripts] in a timely manner." Plaintiff subsequently filed a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules in New York State Supreme Court, Monroe County challenging the Division of Parole's determination. However, on March 17, 2006, the Honorable Harold L. Galloway dismissed the petition. Plaintiff appealed, and on April 20, 2007, the New York State Supreme Court, Appellate Division Fourth Department, affirmed Justice Galloway's decision. In its decision, the Fourth Department specifically rejected Plaintiff's arguments that Cummins had improperly denied him a preliminary hearing and relied on hearsay, and further found that Plaintiff's remaining arguments lacked merit. On July 2, 2007, the New York Court of Appeals denied Plaintiff leave to appeal.

On February 28, 2007, while his appeal was pending before the Fourth Department, Plaintiff commenced the instant action, demanding compensatory and punitive damages. Plaintiff alleges, *inter alia*, that defendants violated his federal constitutional rights, and that as a result he was "forced to serve [a] fifteen month illegal incarceration." (Complaint ¶ 4).

Defendants filed the subject motions to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Defendants maintain that all of the official-capacity claims are barred by the Eleventh Amendment and must be dismissed. Cummins further contends that as an Administrative Law Judge, she is entitled to absolute immunity. Filner and Griesmer contend that they are entitled to qualified immunity, since "[t]here are no known cases supporting the liability of a preparer of [parole hearing] transcripts due to . . . delay." (Memo of Law [#27] at 4). Filner and Griesemer further argue that Plaintiff has not alleged sufficient prejudice from the delay. Filner also contends that she was merely a supervisor, and was not personally involved in the alleged constitutional violations. Alternatively, Defendants contend that Plaintiff is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) from pursuing this action, since his conviction has not been set aside. And finally, Defendants maintain that Plaintiff's claims are barred by collateral estoppel/res judicata, since the issues he raises here were already litigated in his state-court proceedings.

In response, Plaintiff maintains that the official-capacity claims are proper. (Docket [#29]). Plaintiff also states, "[I]f I had been given the opportunity to receive and review my transcripts within the prescribed time frame of the 120 days guaranteed by the N.Y.S. Department of Parole, I would have been immediately restored to parole, and would not have been forced to serve the entire term of this illegal incarceration, since I was denied

4

my right to a preliminary hearing." (Docket [#32] ¶ 13(h)).  Plaintiff also argues that *Heck v. Humphrey* does not apply to administrative proceedings, and that he did not have a full and fair opportunity to litigate his issues in state court. (Docket [#35]).[2]  After the completion of the briefing schedule, Plaintiff filed a motion for appointment of counsel. (Docket [#37]).

## DISCUSSION

At the outset, the Court denies Plaintiff's application for appointment of counsel.  There is no constitutional right to appointed counsel in civil cases.  However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants.  *See, e.g.*, *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988).  Assignment of counsel in this matter is clearly within the judge's discretion.  *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984).  The factors to be considered in deciding whether or not to assign counsel include the following:

1.  Whether the indigent's claims seem likely to be of substance;
2.  Whether the indigent is able to investigate the crucial facts concerning his claim;
3.  Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;
4.  Whether the legal issues involved are complex; and
5.  Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).  Having considered all of these factors, the Court decides that assignment of counsel is not warranted.  As will be discussed further below, a significant factor in that decision is that Plaintiff's claim lacks merit.

---

[2]Plaintiff's criminal sentence expired in 2006.  Accordingly, the Court agrees that this action is not barred by *Heck*. *See, Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001) (Holding that *Heck* does not bar a Section 1983 action when habeas corpus is not available to address constitutional wrongs.).

Turning to Defendants' motions, the Court finds that Plaintiff's official capacity claims are barred by the Eleventh Amendment. In that regard, it is well-settled that state officials cannot be sued in their official capacities for money damages. *See, Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 101, n. 17 (2d Cir. 2003) ("[I]nsofar as Appellee Volovar asserted her claim for monetary damages against Appellants in their official capacities, the State of New York is the real party in interest and monetary damages are barred by the Eleventh Amendment to the United States Constitution.").

The Court will now consider the claims asserted against Defendants in their individual capacities. As recently clarified by the U.S. Supreme Court, the standard to be applied to a 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, No. 05-1126, 550 U.S.544, 127 S.Ct. 1955, 1964-65 (May 21, 2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual

allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

With these general principles in mind, the Court finds at the outset that Cummins has absolute immunity from Plaintiff's claims. In that regard, it is

7

> well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages. *See, e.g., Cleavinger v. Saxner*, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Stump v. Sparkman*, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). This immunity also extends to administrative officials performing functions closely associated with the judicial process because the role of the "hearing examiner or administrative law judge ... is 'functionally comparable' to that of a judge." *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *see also Cleavinger*, 474 U.S. at 200, 106 S.Ct. 496; *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir.1988).
>
> In *Scotto v. Almenas*, 143 F.3d 105 (2d Cir.1998), we stated that "parole board official[s][are] absolutely immune from liability for damages when [they] 'decide to grant, deny, or revoke parole,' because th[ese] task[s][are] functionally comparable to [those] of a judge." *Id*. at 111 (*quoting Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.1981)).

*Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999). Here, it is clear that the acts for which Plaintiff is suing Cummins are ones that she performed in her quasi-adjudicative function as an Administrative Law Judge. Consequently, the claims against Cummins are dismissed.

The Court will now consider the claims against Filner and Griesemer, whom Plaintiff alleges conspired with Cummins to delay the production of the hearing transcripts, in order to prevent him from pursuing an appeal. Filner and Griesemer first contend that they are entitled to qualified immunity, and in that regard they argue that "[t]here are no known cases supporting the liability of a preparer of transcripts due to the delay in completing parole hearing transcripts." (Memo of Law [#27] at 4). However, "[u]sually, the defense of qualified immunity cannot support the grant of a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983) (citation omitted) (Finding, however, that 12(b)(6) dismissal of claim against court reporter on grounds of qualified immunity was appropriate where the complaint alleged that

the court reporter acted pursuant to a judge's explicit instructions.).  Additionally, "[i]t is well-settled that a criminal defendant's right to a trial transcript is of constitutional dimension." *Argentieri v. Majerowicz*, 158 Fed.Appx. 306, 2005 WL 3263833 (2d Cir. Dec. 1, 2005) (Citations omitted).  Defendants contend that the legal principles applicable to criminal appeals should not apply to parole revocation appeals, since "[d]ue process rights associated with a parole revocation hearing, unlike a criminal proceeding, are limited." (Memo of Law [#27] at 5).

However, the Court need not resolve the qualified immunity issue, since it agrees with Defendants' alternative argument that Plaintiff has failed to state a claim even under the principles applicable to criminal appeals.  In that regard, it is well settled that in criminal cases,

> [u]nder certain circumstances, undue delay in furnishing an appellant a transcript for his use on appeal or for post-conviction relief may amount to a deprivation of due process. *United States v. Pratt*, 645 F.2d 89, 91 (1st Cir.), *cert. denied*, 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); *Rheuark v. Shaw*, 628 F.2d 297, 302 (5th Cir.1980); *Curry v. Pucinski*, 864 F.Supp. 839, 843-44 (N.D.Ill.1994). Courts in this circuit examine four factors to determine whether an appellant's due process rights have been violated by a delay, as set forth in *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S.Ct. 2182, 2191-93, 33 L.Ed.2d 101 (1972):(1) the length of the appellate delay; (2) the reasons for the delay; (3) the petitioner's assertion of his right to a speedy appeal; and (4) prejudice to the petitioner caused by the delay. *See Simmons v.. Reynolds*, 898 F.2d 865, 868 (2d Cir.1990); *Wallace v. Leonardo*, 827 F.Supp. 150, 156 (W.D.N.Y.1993), *aff'd* 29 F.3d 621 (table), *cert. denied* 513 U.S. 1023, 115 S.Ct. 592, 130 L.Ed.2d 505 (1994). The *Barker* factors must be balanced and no single factor is necessary or sufficient in finding a deprivation. *Williams v. James*, 770 F.Supp. 103, 107 (W.D.N.Y.1991) (*citing Barker*, 407 U.S. at 533, 92 S.Ct. at 2193).
> ***
> "The length of the delay," the Supreme Court . . . reasoned, "is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2190.

*U.S. v. Arena*, No. 95-CR-144, 1998 WL 146306 at *2 (N.D.N.Y. Mar. 26, 1998). In the instant case, the Court finds that the alleged delay was not presumptively prejudicial. Plaintiff requested the transcripts on or about May 20, 2004, and he received two of the four transcripts within a month. Plaintiff received the third transcript in October, and he received the last transcript on March 12, 2005. Accordingly, the total length of time that it took Plaintiff to receive all transcripts was less than ten months. However, Defendants were entitled to a reasonable amount of time to produce the transcripts, and therefore, the "delay" was clearly much less than ten months. *See, U.S. v. Arena*, 1998 WL 146306 at *2 ("For the purposes of a *Barker* analysis, the court holds [that defendant's] delay accrued from the day on which she reasonably could have expected her transcript."). Such a delay is insufficient to establish a constitutional violation. *See, Id*. ("[Defendant's] delay in receiving the transcripts amounted to roughly ten months. Given the circumstances, such a delay is not presumptively prejudicial and does not violate [defendant's] right to appellate due process."); *see also, Cameron v. LeFevre*, 887 F.Supp. 425, 430 (E.D.N.Y. 1995) ("A review of the other circuits indicates that delays ranging from fifteen months to four years have all been held substantial enough to warrant inquiry into possible due process violations.") (citations omitted).

Even assuming *arguendo* that the delay was sufficiently prejudicial, the Court finds that an application of the remaining *Barker* factors requires dismissal of the claim against Filner and Griesemer. First, as to the reason for the delay, Plaintiff accuses Defendants of conspiring to delay his appeal. *See*, Complaint, ¶ 5 ("[Defendants are] legally responsible for conspiring with Administrative Law Judge Judith Cummins in denying the Plaintiff access to the court in order to pursue an administrative appeal by denying him the stenographic

transcripts of his parole revocation hearings."); *see also, Id*. at ¶ 49. In that regard, though, Plaintiff does not offer any facts to suggest how or when Defendants would have made such an agreement.[3] On the other hand, as discussed above the Complaint indicates that the delay was due to an administrative error. (Complaint, attached letter received by Division of Parole on May 20, 2004: "Transcripts for 3/18 4/1 & 4/8 ordered 5/26/04. Nothing found for 5/13/04."). As for the next *Barker* factor, it appears that Plaintiff made diligent attempts to assert his right to a speedy appeal, by requesting the May 13, 2004 transcript on several occasions. However, as for the fourth and final *Barker* factor, it does not appear that Plaintiff was truly prejudiced by the delay, since his appeal was denied on the merits. Although Plaintiff claims that if he had received the transcripts sooner, he would have been released sooner, since he was improperly denied a preliminary hearing, (See, Docket [#32] ¶ 13(h)), as already discussed, proof of that claim was contained in the transcripts that Plaintiff received in June 2004. And, in any event, it is clear that Plaintiff's argument concerning a preliminary hearing lacks merit. At most, Plaintiff may have suffered some anxiety as a result of the delay. *See, Cameron v. FeFevre*, 887 F.Supp. at 433 ("As to the . . . anxiety and concern suffered by petitioner, it should first be noted that the need to protect a person who has been convicted of a crime, but who appeals from his conviction,

---

[3] Plaintiff similarly fails to offer any plausible reason why Defendants would have withheld the May 13, 2004 transcript, while producing the other transcripts. As to that, Plaintiff's main point on appeal was that he was denied a preliminary hearing. However, Cummins's denial of the preliminary hearing was referenced in the transcripts that were provided to Plaintiff much earlier. *See*, Complaint ¶ 52 ("Plaintiff improperly denied his rights to a Preliminary hearing at the initial hearing on March 18, 2004.") To survive a 12(b)(6) motion, a conspiracy claim must be supported by facts "that would provide plausible grounds to infer an agreement." *In re Elevator Antitrust Litigation v. United Technologies Corp.*, 502 F.3d 47, 50 (2d Cir. 2007); *see also, Id.* ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible.") (citation and internal quotation omitted). In this case, the Complaint does not contain any plausible allegations regarding a conspiracy between the Defendants.

against anxiety is considerably weaker than the need to protect a person awaiting trial, because a convicted person is not entitled to a presumption of innocence. Nevertheless, petitioner has undoubtedly suffered some anxiety and concern as a result of the almost four-year delay in his appeal, particularly in light of his relatively short sentence.") (citations and internal quotation marks omitted). Based on all of the foregoing, and particularly in light of the relatively brief delay and the lack of prejudice, the Court finds that the Complaint fails to state a claim of constitutional magnitude against Filner or Griesemer.

## CONCLUSION

Accordingly, Plaintiff's motion for appointment of counsel [#37] is denied, Defendants' motions to dismiss [#7][#25] are granted, and this action is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   Rochester, New York
         December 2, 2008

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge